**AMERICAN ECONOMY INSURANCE COMPANY, Plaintiff,**

v.

**FORT DEPOSIT BANK; Life of South Insurance Company; and Muffin Miles, Defendants.**

**No. 94–D–1445–N.**

United States District Court, M.D. Alabama, Northern Division.

May 3, 1995.

James E. Williams, Montgomery, AL, for plaintiff.

W. Michael Atchison, Birmingham, AL, Thomas J. Methvin, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is Plaintiff's Motion for Summary Judgment, filed March 28, 1995. Defendants Fort Deposit Bank and Muffin Miles filed a response and supporting brief in opposition to Plaintiff's motion on April 13, 1995.[1] Defendants supplemented their response on April 18, 1995. A thorough examination and analysis of the facts and applicable law compels the conclusion that Plaintiff's Motion for Summary Judgment is due to be denied.

### Jurisdiction & Venue

Plaintiff seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. Since American Economy Insurance Company (hereinafter "American Economy") has an independent basis for jurisdiction, as required by the Declaratory Judgment Act,[2] the court may properly assert jurisdiction over the above-styled cause.[3] Personal jurisdiction and venue are not contested.

### Factual Background

American Economy seeks a judgment from the court declaring that it has no duty under American Economy policy number 02–CC–397–984–2 (hereinafter the "Policy") issued to Defendant Fort Deposit Bank (hereinafter "FDB") to defend or indemnify FDB in a lawsuit filed and maintained in the Circuit Court of Lowndes County, Alabama, by Muffin Miles (hereinafter "Mr. Miles"). Mr. Miles and his wife executed a loan that they thought, allegedly, was in the amount of two thousand five hundred dollars ($2,500)[4] with FDB. The couple obtained credit life insurance for Mrs. Miles in conjunction with the loan.[5] Subsequently, Mrs. Miles died and Mr. Miles made a claim for the credit life insurance. Life of South Insurance Company (hereinafter "Life of South") purportedly denied the claim based upon Mr. Miles' failure to truthfully answer health inquiries on the credit life insurance application. Mr. Miles then brought suit in the Circuit Court of Lowndes County, Alabama, alleging that FDB acted fraudulently[6] in failing to ask insurance questions contained on the health application. FDB avers that it asked all questions appearing on the insurance application. Mr. Miles alleges fraud against FDB for its initial failure to ask said health questions and ultimate failure to satisfy its contractual obligation.

On July 1, 1992, American Economy and FDB executed a commercial general liability policy with American Economy issuing policy number 02–CC–397–984–2 (hereinafter the "Policy") to FDB. Muffin Miles filed suit in the Circuit Court of Lowndes County, Ala-

---

1. Defendant Life of South Insurance Company was dismissed from the above-styled action on December 1, 1994.

2. Section 2201 provides in relevant part,
 [i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or should be sought.
 28 U.S.C. § 2201.

3. Diversity jurisdiction exists in this matter as Plaintiff American Economy and all Defendants are of diverse citizenship and the amount in controversy exceeds FIFTY THOUSAND DOLLARS ($50,000), exclusive of interest and costs. See 28 U.S.C. § 1332(a)(1).

4. Miles Complaint (Circuit Court of Lowndes County, Alabama), ¶ 7.

5. Mr. Miles contends that the loan was actually in the amount of ten thousand two hundred ninety-nine dollars and 72/100 dollars ($10,-299.72). Miles Complaint, ¶ 8. According to the complaint in the underlying state court action neither Mr. nor Mrs. Miles could read or write at the time they executed the loan. Miles Complaint, ¶ 10.

6. Mr. Miles' complaint contained the following counts against FDB in the underlying state court action: 1) fraudulent failure to disclose that the Miles' were borrowing in excess of $10,000; 2) fraudulent representation that Mr. and Mrs. Miles were borrowing $2,500; 3) fraudulent representation that the loan would be paid off in the event of Mrs. Miles's death; 4) fraudulent failure to disclose that FDB would satisfy the Miles's loan upon Mrs. Miles's death; 5) fraudulent overcharging on the subject loan; 6) negligent misrepresentation and charging; and 7) intentional and reckless misrepresentation and charging of credit life insurance premium.

bama, on May 13, 1994, against FDB and Life of South. On November 8, 1994, Plaintiff filed the above-styled action in this court requesting declaratory relief. American Economy avers that the claims in the state court action are not based on an "occurrence" as that term is defined in the Policy. American Economy further claims that the underlying action does not contain a claim for damages because the Policy only sanctions damages in the event of bodily injury, property damage, advertising injury or personal injury as defined therein. Since the damages that are the focus of the underlying state court action allegedly do not lie within the purview of the Policy, American Economy contends that it is under no duty to indemnify or provide a defense for FDB.

Moreover, American Economy claims that the Policy expressly excludes coverage for alleged bodily injury and property damages which is "expected or intended from the standpoint of the insured." American Economy contends that the alleged misrepresentations made by FDB which gave rise to the underlying state court action evinces fraud. Plaintiff claims that fraud entails intent; therefore, allegedly, it is under no duty to provide representation for or pay damages on behalf of FDB in the underlying action.

### Summary Judgment Standard

■ On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. *See also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### *Discussion & Analysis*

The Federal Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction. . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief could be sought.

28 U.S.C. § 2201(a). In the present action, American Economy is contractually obligated to provide a defense for and indemnification to FDB. However, Plaintiff avers that it has no obligation to provide coverage for representation and indemnification to FDB in the underlying state court action because the acts complained of by Mr. Miles are not within the Policy's coverage.

The Policy provides payment to the insured for those "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this policy applies." (Policy 02–CC–397–984–2, § I1a). The Policy also requires American Economy "to defend any 'suit' seeking those damages." *See id.* According to the Policy, "[n]o other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for . . . ." *See id.*

The Policy also provides coverage for personal and advertising injury liability, as it informs: "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this coverage applies." (Policy 02–CC–397–984–2, § IBa). The Policy defines bodily injury, property damage, personal injury and advertising injury as follows:

### SECTION V—DEFINITIONS

1. " 'Advertising injury' means injury arising out of one or more of the following offenses:

 a. Oral or written publication of material that slanders or libels a person or organization or disparages person's or organization's goods, products or services;

 b. Oral or written publication of material publication of material that violates a person's right of privacy;

 c. Misappropriation of advertising ideas or style of doing business; or

 d. Infringement of copyright, title or slogan.

 \*　\*　\*　\*　\*　\*

3. 'Bodily injury' means bodily injury, **sickness** or **disease** sustained by a person, including death resulting from any of these at any time (bold type added).

 \*　\*　\*　\*　\*　\*

10. " 'Personal injury' means injury, other than "bodily injury", arising out of one or more of the following offenses:

 a. False arrest or, detention or imprisonment;

 b. Malicious prosecution;

 c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or behalf of its owner, landlord or lessor;

 d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

 e. Oral or written publication of material that violates a person's right of privacy.

 \*　\*　\*　\*　\*　\*

12. Property damage means:

 a. physical injury to tangible property, including all resulting loss of use of that property. . . . ; or

 b. Loss of use of tangible property that is not physically insured. . . .

The Policy also sets forth a genre of conduct which, if engaged in by the insured, precludes recovery. According to the exclusionary provisions of policy number 02–CC–397–894–2:

T[he] policy does not apply to:

a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured....

b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement ...

\* \* \* \* \* \*

This insurance does not apply to:

a. "Personal injury" or "advertising injury"

\* \* \* \* \* \*

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

\* \* \* \* \* \*

In the underlying state court action, Mr. Miles does not state specifically that FDB caused him physical bodily harm. Neither does Mr. Miles contend that FDB slandered or libeled him or his deceased wife. Rather, Mr. Miles alleges that FDB acted fraudulently in executing the subject loan and by not satisfying the debt of Mrs. Miles following her death thereby causing him mental anguish.

■ Under Alabama law, "[a]n insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured." [7] *Ajdarodini v. State Auto Mutual Insurance Co.,* 628 So.2d 312, 313 (Ala.1993)

(citing *American States Insurance Co. v. Cooper,* 518 So.2d 708, 709 (Ala.1987)). The primary test in determining whether an insurance company owes a duty to provide an insured with a defense to proceedings brought against it are the allegations articulated in the complaint. *United States Fidelity & Guaranty Co. v. Armstrong,* 479 So.2d 1164, 1167 (Ala.1985); *Ladner & Co. v. Southern Guaranty Insurance Co.,* 347 So.2d 100, 102 (Ala.1977). If the court finds that Mr. Miles complaint in the underlying state court action alleges an "occurrence" which falls within the subject policy's scope of coverage, American Economy is "obligated to defend" FDB, regardless of the eventual liability of FDB. *Armstrong,* 479 So.2d at 1167; *Ladner & Co.,* 347 So.2d at 102; *see also Ajdarodini,* 628 So.2d at 313; *Cooper,* 518 So.2d at 709. Accordingly, the court must look initially to the complaint in the underlying state court action then to the language of the policy. Therefore, the court finds that this action presents but a single paramount issue: whether the substance of one or more of Mr. Miles' claims in the underlying state court action constitute an "occurrence" within the definition of the Policy which would create a duty for American Economy to provide a defense for FDB in the underlying damages action and possibly indemnify FDB for resulting pecuniary liability therefrom flowing.

■ In the underlying state court action, Mr. Miles alleges, in Count VI of the complaint, that he suffered mental anguish as a result of FDB's negligence in misrepresenting material statements regarding the subject credit life insurance and overcharging him and his wife for said insurance. In Count VII, Mr. Miles avers that he suffered mental anguish because FDB innocently and recklessly misrepresented material facts and

---

**7.** When federal district courts sit in diversity, they must apply the substantive law of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The *Erie* doctrine extends to the forum state's choice of law rule (i.e., a federal district court sitting in diversity must apply the forum state's choice of law rule). *See Klaxon Company v. Stentor Electric Manufacturing Company, Inc.,* 313 U.S. 487,

494–98, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). It is long established in Alabama that "the law of the state wherein the contract was executed is determinative of the rights and liabilities of the parties to the contract." *See Harrison v. Insurance Company of North America,* 294 Ala. 387, 391, 318 So.2d 253, 257 (1975) (citing *Furst & Thomas v. Sandlin,* 208 Ala. 490, 94 So. 740 (1922)).

charged him a premium for credit life insurance that would not pay off.

In construing the language of insurance contracts governed by Alabama law, tribunals have characterized mental anguish as "bodily injury." In *Morrison Assurance Company v. North American Reinsurance Corporation*, 588 F.Supp. 1324, 1327 (N.D.Ala.1984), the court, applying Alabama law, found that although mental anguish was not articulated specifically in the subject policy, the terms "sickness" or "disease" necessarily encompassed mental anguish. *See also Cooper*, 518 So.2d at 711. Therefore, the court is not obliged to conclude that Mr. Miles' purported injury fall outside the Policy's coverage.

 The Alabama Supreme Court has declared that reliance upon misrepresentations may or may not constitute an "occurrence" in the context of insurance contracts, *Cooper*, 518 So.2d at 710 (citing *Ladner*, 347 So.2d 100), as the suppression of a material fact may or may not entail intent. However, if an alleged act is shown to have been committed intentionally, actions arising from such act are vulnerable to an 'intentional acts' exclusion.[8] *Townsend v. Auto-Owners Insurance Co.*, 656 So.2d 360 (Ala.1995). A mere "breach of the defendant's duty to disclose suppressed facts is sufficient to trigger liability." *Id.* at 363 (citing *Burlington Northern R.R. v. Warren*, 574 So.2d 758 (Ala.1990)).

 In the instant action, Plaintiff adduces no evidence which leads the court to believe that the alleged actions and communications (of FDB's agents) in selling Mr. and Mrs. Miles credit life insurance constitute intentional misconduct. Furthermore, after carefully analyzing the Alabama Supreme Court's holding and supporting explanation in *Cooper*, the court finds that the complaint in the underlying action sets forth an "occurrence" as that term is defined in the Policy. As the *Cooper* court stated,

"[p]laintiffs in the underlying damage suits, however, have alleged that the misrepresentations upon which they relied were either intentionally or recklessly or innocently made. On the basis of those allegations, the Court finds that both American [States Insurance Company] and Constitution [State Insurance Company] are obligated to defend Cooper and Lakeside Properties, and further to indemnify them except for intentional misrepresentations."

*Cooper*, 518 So.2d at 710.[9] The court also deems it noteworthy that the plaintiffs in the underlying damage action in *Cooper* claimed that they experienced mental anguish as a consequence of the alleged actions of the insurance carriers. *Id.* at 711. In light of *Cooper*, the court finds that the Plaintiff has indeed set forth a claim which qualifies as an "occurrence" which avoids the grasp of the intentional misconduct exclusion provision of the Policy.

## Conclusion

Because the Alabama Supreme Court has held that mental anguish constitutes "bodily injury" within the meaning of policy provisions strikingly similar to the policy in this case, the court finds that such injury falls within the definition of "bodily injury" as defined in the Policy. Moreover, in the underlying state court action, plaintiff alleges that FDB acted innocently, negligently, or recklessly in misrepresenting certain facts but, American Economy fails to demonstrate that FDB's agents acted intentionally in regard to its alleged misconduct giving rise to the underlying state court action; therefore, the exclusion provision of the Policy is not evoked.

---

8. To prove suppression of a material fact, the Plaintiff must demonstrate (1) that the defendant had a duty to disclose that fact, (2) that the defendant concealed or failed to disclose that fact, (3) that the concealment or failure to disclose induced the plaintiff to act, and (4) that the action caused injury to the plaintiff. *Alabama Code 1975, § 6–5–102, see also Baker v. Bennett*, 603 So.2d 928, 934–35 (Ala.1992); *Gary v. Kirkland*, 514 So.2d 970, 971–72 (Ala.1987).

9. In *Cooper*, American States Insurance Company was the primary insurance carrier and Constitution State Insurance Company was the excess carrier.